UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


JASON MATTHEW MEYER,

       Petitioner,

                                 CASE NO. 5:13-CV-12307
   v.                         JUDGE JOHN CORBETT O'MEARA
                                 MAGISTRATE JUDGE PAUL J. KOMIVES

PAUL KLEE,

       Respondent.

_____/


## REPORT AND RECOMMENDATION

*Table of Contents*

I.     RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
II.    REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    A.    *Procedural History* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    B.    *Factual Background Underlying Petitioner's Conviction* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
    C.    *Standard of Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
    D.    *Weight of the Evidence (Claim V)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
        1.    *Weight of the Evidence* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
        2.    *Sufficiency of the Evidence* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
            a. Clearly Established Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
            b. Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
    E.    *Jury Instructions (Claim VI)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
        1.    *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
        2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
    F.    *Counsel (Claims I-IV, VII)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
        1.    *Denial of Self Representation (Claim IA)* . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
            a. Clearly Established Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
            b. Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
        2.    *Ineffective Assistance (Claims IB-IV, VII)* . . . . . . . . . . . . . . . . . . . . . . . . . . 23
            a. Clearly Established Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
            b. Failure to Investigate (Claim IB) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25
            c. Failure to Object to Joinder (Claims II & VII) . . . . . . . . . . . . . . . . . . . . . . . 28
            d. Failure to Offer Mitigating Evidence (Claim III) . . . . . . . . . . . . . . . . . . . . . . 30
            e. Failure to Object to Police Testimony (Claim IV) . . . . . . . . . . . . . . . . . . . . . . 31
    G.    *Recommendation Regarding Certificate of Appealability* . . . . . . . . . . . . . . . . . . . . . . . . . . 32
        1.    *Legal Standard* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32
        2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33
    H.    *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34
III.   NOTICE TO PARTIES REGARDING OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

I.     RECOMMENDATION: The Court should deny petitioner's application for the writ of habeas corpus and should deny petitioner a certificate of appealability.

II.    REPORT:

A.     *Procedural History*

1.      Petitioner Jason Matthew Meyer is a state prisoner, currently confined at the Gus Harrison Correctional Facility in Adrian, Michigan.

2.      On March 26, 2010, petitioner was convicted of domestic violence, MICH. COMP. LAWS § 750.81(2); two counts of resisting or obstructing a police officer, MICH. COMP. LAWS § 750.81d(1); two counts of malicious destruction of property under $200, MICH. COMP. LAWS § 750.377a(1)(d); first degree home invasion, MICH. COMP. LAWS § 750.110a(2); felonious assault, MICH. COMP. LAWS § 750.82; and aggravated stalking, MICH. COMP. LAWS § 750.411i, following a jury trial in the Saginaw County Circuit Court.  On June 1, 2010, he was sentenced to concurrent terms 93 days' imprisonment on each of the domestic violence and malicious destruction of property convictions, one year's imprisonment on each of the resisting or obstruction convictions, 88 months' to 20 years' imprisonment on the home invasion conviction, 1½-4 years' imprisonment on the felonious assault conviction, and 2-5 years' imprisonment on the stalking conviction.

3.      Petitioner appealed as of right to the Michigan Court of Appeals raising, through appointed counsel, the following claims:

     I.      THE VERDICT WAS AGAINST THE GREAT WEIGHT OF THE EVIDENCE.

     II.     THE TRIAL COURT ERRED BY ISSUING ERRONEOUS JURY INSTRUCTIONS ON HOME INVASION-FIRST DEGREE.

     III.    DEFENDANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL WHEN TRIAL COUNSEL FAILED TO RESPOND TO THE PEOPLE'S MOTION FOR JOINDER OF ALL FIVE CASES SINCE THEY

INVOLVED DIFFERENT FACTS, DATES AND DIFFERENT
COMPLAINANTS.

Petitioner subsequently retained new appellate counsel, who filed a supplemental brief raising four

additional claims:

I.    THE TRIAL COURT ERRED WHEN IT REFUSED TO ALLOW THE
      DEFENDANT/APPELLANT TO REPRESENT HIMSELF DESPITE HIS
      SPECIFIC REQUEST, APPARENT BREAK-DOWN IN
      COMMUNICATION WITH HIS LAWYER AND THE TRIAL
      ATTORNEY'S ADMISSION HE WAS UNPREPARED FOR TRIAL.

II.   THE DEFENDANT/APPELLANT, JASON MATTHEW MEYER, WAS
      DENIED EFFECTIVE ASSISTANCE OF COUNSEL WHEN HIS TRIAL
      ATTORNEY FAILED TO RESPOND TO THE PEOPLE'S MOTION FOR
      JOINDER AND WHERE THERE WAS BASIS TO ARGUE THAT THE
      FIVE SEPARATE COUNTS INVOLVED DIFFERENT COMPLAINANTS,
      WITNESSES, DATES AND FACTS AND SHOULD NOT HAVE BEEN
      JOINED.

III.  THE DEFENDANT/APPELLANT WAS DENIED EFFECTIVE
      ASSISTANCE OF COUNSEL WHEN THERE WAS NO OBJECTION TO
      POLICE TESTIMONY REGARDING A FIREARM THAT WAS
      INACCURATE, MISLEADING AND SHOULD HAVE BEEN STRICKEN
      WITH A CURATIVE INSTRUCTION.

IV.   THE TRIAL COURT ERRED IN FAILING TO CONSIDER A
      DOWNWARD DEPARTURE AT THE TIME OF SENTENCING WHERE
      TRIAL COUNSEL FAILED TO PROVIDE SUFFICIENT OBJECTIVE
      FINDINGS THAT WOULD HAVE JUSTIFIED A DEPARTURE.

The court of appeals found no merit to petitioner's claims, and affirmed his conviction and sentence.

*See People v. Meyer*, No. 300025, 2011 WL 5454754 (Mich. Ct. App. Nov. 10, 2011) (per curiam).

4.    Petitioner sought leave to appeal these issues to the Michigan Supreme Court. The

Supreme Court denied petitioner's application for leave to appeal in a standard order. *See People v.*

*Meyer*, 491 Mich. 919, 812 N.W.2d 730 (2012).

5.    Petitioner, proceeding *pro se*, filed the instant application for a writ of habeas corpus

on May 23, 2013. As grounds for the writ of habeas corpus, he raises the seven claims that he raised

3

in the state courts.

6.    Respondent filed his answer on December 3, 2013.  He contends that petitioner's first and fourth claims are barred by petitioner's procedural default in the state courts, and that all of his claims are without merit.

B.    *Factual Background Underlying Petitioner's Conviction*

Petitioner was charged with numerous crimes in four separate criminal cases, all arising from interactions between petitioner and his former girlfriend, Alyssa Ashley, or with the police.  The evidence adduced at trial was best summarized in respondent's answer:

> Alyssa Ashley and Jason Meyer were in a relationship once upon a time and they had a 2-year-old son. (3/24/10, Trial Tr. A.M. at 15.) In the late spring of 2008, the pair moved into an apartment together. (*Id*. at 16.) But come November of the same year, they were having problems in their relationship which led to several altercations and just as many calls to police. (*Id*. at 17.)

> **Incident on November 1, 2008**

> On November 1, 2008, Meyer locked himself and their son inside the apartment and would not allow Alyssa inside; he also said he was not going to give their son back to her. (*Id*. at 17-18, 21-23.)
> Off. Jason Fromholz of the Saginaw Township Police Department responded to the apartment when he was notified by central dispatch that a female caller asked for the police by whispering into the phone. (*Id*. at 49-50.) When he arrived, he saw Alyssa standing outside; she was visibly upset and was crying. (*Id*. at 50.) Alyssa told Off. Fromholz that Meyer had physically assaulted her and pointed a "long gun" at her. (*Id*.) She also told him that Meyer still had their son inside the apartment. (*Id*. at 50, 58-59.)
> Later, when Off. Fromholz took Alyssa's statement as to what happened, she told him that Meyer wanted the ring back that he had given her. (*Id*. at 51.) So he got her in the bedroom, got on top of her, and tried to pull it off of her finger. (*Id*.) As he was trying to pull the ring off, he punched her several times in the back of the head. (*Id*.) He then got off of her, he got his long gun out of the closet and pointed it at her. (*Id*.) Off. Fromholz felt the bumps on the back of Alyssa's head where she said Meyer had punched her. (*Id*.)
> Despite the information contained in the police report, Alyssa testified that she did not call the police, she had no memory of Meyer striking her, causing bumps and bruises to the back of her head, and she had no memory of Meyer pulling a gun on her. (*Id*. at 21.)

4

At the time of the incident, the officer's primary concern was getting the child out of the apartment safely, so he and another officer, Officer Guerrero, talked to Meyer through the door. (Id. at 51-52.) Meyer said he would not open the door without talking to his attorney. (*Id*.) But Off. Guerrero was able to persuade Meyer to put the child outside on the back balcony of the second floor apartment along with the diaper bag. (*Id*. at 51-52, 60.) Off. Guerrero was lifted to the balcony and was able to get the child to the other officers below. (*Id*.) After Meyer was taken into custody, a gun may have been recovered from the apartment according to Off. Fromholz. (*Id*. at 54-55.)

**Incident on November 12, 2008**

On November 12, 2008, Detective Rick Herren of Saginaw Township was advised that Jason Meyer had felony warrants out against him based on a domestic violence incident that happened several days before. (*Id*. at 80, 82.) He contacted the apartment complex and was given permission to do surveillance in the apartment above Meyer's. (*Id*. at 81-82.) As Det. Herren was standing on the landing above the apartment, he overheard Meyer talking on the phone about running from the police. (*Id*. at 83-84.)

Wasting no time, Det. Herren got on his radio and asked for backup from several other officers. (*Id*. at 85.) When the other officers arrived they set up positions on the north and south ends of the apartment so they could easily see the exits. (*Id*.) The remaining officers and Det. Herren tried to develop a plan to contact Meyer without it turning into a barricade situation. (*Id*.) But before they could formulate a plan, Meyer stepped out onto his balcony to smoke and saw the officers and the police cars. (*Id*. at 85-86.)

Losing the element of surprise, Det. Herren went to the door with a key and tried to talk to Meyer–telling him that he was with the Saginaw Township police. (*Id*. at 86.) He did this several times with no response from Meyer. (*Id*. at 87.) At that point, Det. Herren tried to unlock the door with the key, but he could not get the deadbolt to release. (*Id*.) Off. Fromholz kicked the door down and the officers discovered that Meyer had rigged the door to stay shut with a vacuum cord and locking pliers. (Id. at 87-88.) Meyers was then arrested. (Id. at 89.)

**Incident on November 23, 2008**

Nearly two weeks after Meyer's second arrest, Alyssa was staying at her grandmother's house (Lawanda Klonowski). (*Id*. at 25, 62-63.) Meyer showed up at the house and tried to get in by kicking the door several times. (Id. at 26-27.) When he could not get in, Meyer threw a pumpkin at the passenger window of the car Alyssa was using–breaking it. (*Id*. at 27-28.)

Deputy Toby Sewell of the Saginaw County Sheriff's Office was dispatched to the house. (3/24/10, Trial Tr. P.M. at 4.) When he arrived, he found a passenger side window broken and several boot prints on the side-door to the house. (*Id*. at 4-7.) It appeared to him that someone was attempting to kick in the door. (*Id*. at 4.) Also, the door jamb was cracked and the wood was broken away from the striker plate. (*Id*. at

5-7.)

Det. Sewell made contact with Alyssa and saw that she was very upset, she was shaking and seemed scared; she also looked as if she had been crying. (*Id*. at 8-9.) Alyssa told Det. Sewell that she saw Meyer kicking at door trying to get in–both through that door and the others. (Id. at 9-10.) She also saw Meyer break the car window and she heard him say that he was going to come back and kill her. (*Id*. at 10.)

Alyssa's grandmother said that she was not there when Meyer tried to kick in her door, but she confirmed that her door was not damaged when she left her house and it was when she returned.

## Incident on December 5, 2008

On December 5, 2008, Alyssa was at her grandmother's house preparing to go up north with her new boyfriend, Bryan Anderson. (3/24/10, Trial Tr. A.M. at 33-34; 3/24/10, Trial Tr. P.M. at 30-31.) Meyer arrived at the house. Alyssa, not wanting Meyer to see her new boyfriend, intercepted Meyer at the back door. (3/24/10, Trial Tr. A.M. at 34.) While she was giving Meyer back some of his belongings, Anderson walked into the kitchen. (*Id*. at 35.) Alyssa told Meyer to leave, but he came right into the house and went after Anderson with a decorative shovel. (3/24/10, Trial Tr. P.M. at 32, 34-35.) The shovel struck Anderson, causing a scratch and later a scar. (3/24/10, Trial Tr. A.M. at 37, 69; 3/24/10, Trial Tr. P.M. at 36.) Meyer then left the house and used the decorative shovel to break Anderson's rear car window. (3/24/10, Trial Tr. A.M. at 35, 67; 3/24/10, Trial Tr. P.M. at 37.)

Deputy Russell Kolb responded to this latest incident. (3/24/10, Trial Tr. P.M. at 15.) When he arrived he saw that Alyssa was distraught, crying, and upset over what happened. (*Id*.) Anderson, who had an injury to his left arm, also appeared to be shaken and scared. (*Id*.) During his time at the scene, Dep. Kolb found a broken decorative shovel. (*Id*. at 16.)

Through Meyer's cell phone carrier, Dep. Kolb tracked him to a local TGI Friday's restaurant. (*Id*. at 16.) When he arrived there, he say Meyer's car in the restaurant's parking lot. (*Id*. at 20.) Dep. Kolb, assisted by Deputy Aaron Simons, went into the restaurant to look for Meyer. (*Id*. at 23-24.) Dep. Simons checked the men's restroom, but found no one in there. (*Id*. at 24-25.) He then went into the women's restroom–announcing who he was and asking if anyone was in there. (*Id*. at 25.) A voice said "Christina;" Dep. Simons said the voice was high-pitched, but sounded like a male voice trying to sound like a female. (*Id*.) Dep. Simons looked under the stall door and saw a pair of legs and a pair of large shoes that appeared to be men's, blue jeans, and boxers around the person's ankles. (Id.) The deputy looked through the slit between the door and the frame and saw Meyer sitting on the toilet. (*Id*.)

Dep. Simons told Meyer to come out, but because he just sat there, Simons kicked in the door. (*Id*. at 26.) The door hit Meyer in the face, knocking him off the toilet. (*Id*.) Meyer then stood up and lunged toward Simons, but he tripped and fell because his pants were around his ankles. (*Id*.) As Simons was trying to put cuffs on him, Meyer tucked his arms underneath his chest, but Simons managed to force

Meyer's arms behind his back. (*Id.*)

**Alyssa and Meyer stayed in constant contact between November 2008 and the trial date**

From November 2008 to March 2010, Alyssa had hundreds of contacts with Meyer despite a no-contact order. (3/24/10, Trial Tr. A.M. at 20, 31-32, 37.) She also admitted that Meyer gave her suggestions as to what she should say when she testified. (*Id.* at 37.)

Answer, at 5-12; *see also*, Def.-Appellant's Br. on Appeal, in *People v. Meyer*, No. 300025 (Mich.

Ct. App.), at 1-5; Def.-Appellant's Supp. Br. on Appeal, at 7-15.[1]

C.     *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by the

provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-

132, 110 Stat. 1214 (Apr. 24, 1996).  *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997).  Amongst

other amendments, the AEDPA amended the substantive standards for granting habeas relief by

providing:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning."

---

[1]In addition to the charges upon which petitioner was convicted, petitioner was also charged the another count of felonious assault, possession of a firearm during the commission of a felony, and attempted home invasion.  Petitioner was acquitted of these charges.

*Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002).  "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535 U.S. at 694.  "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694.  However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous.  The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409.  As the Supreme Court has explained, the standard for relief under § 2254(d) "is difficult to meet, [and] that is because it was meant to be." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011).  As the Court explained, "[s]ection 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice system,' not a substitute for ordinary error correction through appeal."  *Id*. (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in the judgment)).  Thus, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Id*. at 786-87.

8

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court." Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412. Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.' In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412). The relevant "clearly established law" is the law that existed at the time of the last state court decision to issue a reasoned decision on the claim, *see Greene v. Fisher*, 132 S. Ct. 38, 44-45 (2011), and in evaluating the reasonableness of that decision a federal habeas court is limited to the record that was before the state court at the time of its decision, *see Cullen v. Pinholster*, 131 S. Ct. 1388, 1398-99 (2011).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16. Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp. 2d 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

9

D.      *Weight of the Evidence (Claim V)*

In his fifth claim, petitioner contends that the verdict on the home invasion charge was against the weight of the evidence. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

1.      *Weight of the Evidence*

To the extent that petitioner argues that he is entitled to habeas relief because the jury's verdict was against the great weight of the evidence, his claim is not cognizable. It is well established that habeas review is not available to correct errors of state law. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *Jackson v. Ylst*, 921 F.2d 882, 885 (9th Cir. 1990) (a federal court on habeas review "ha[s] no authority to review a state's application of its own laws."). The federal constitution requires only that the evidence be sufficient to sustain the conviction under the standard established in *Jackson v. Virginia, infra*. Where the evidence is sufficient as a matter of due process, a claim that the verdict was against the weight of the evidence presents a state law issue which is not cognizable on habeas review. *See Douglas v. Hendricks*, 236 F. Supp. 2d 412, 435-36 (D.N.J. 2002); *Dell v. Straub*, 194 F. Supp. 2d 629, 648 (E.D. Mich. 2002) (Friedman, J.); *Correa v. Duncan*, 172 F. Supp. 2d 378, 381 (E.D.N.Y. 2001); *cf. Tibbs v. Florida*, 457 U.S. 31, 44 (1982) (noting in a different context that "trial and appellate judges commonly distinguish between weight and sufficiency of the evidence."). In short, "[a] federal habeas court has no power to grant habeas corpus relief because it finds that the state conviction is against the 'weight of the evidence.'" *Young v. Kemp*, 760 F.2d 1097, 1105 (11th Cir. 1985).

Thus, the only question here is whether the evidence was constitutionally sufficient to prove all of the elements of the offense for which petitioner was convicted beyond a reasonable doubt.

10

2.      *Sufficiency of the Evidence*

To the extent petitioner is attempting to assert a sufficiency of the evidence claim, his claim is without merit.

*a.  Clearly Established Law*

The Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship*, 397 U.S. 358, 364 (1970). Under the pre-AEDPA standard for habeas review of sufficiency of the evidence challenges, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). Reviewing courts must view the evidence, draw inferences and resolve conflicting inferences from the record in favor of the prosecution. "[I]t is the responsibility of the jury–not the court–to decide what conclusions should be drawn from the evidence admitted at trial." *Cavazos v. Smith*, 565 U.S. 1, ___, 132 S. Ct. 2, 4 (2011) (per curiam). The *Jackson* standard "leaves juries broad discretion in deciding what inferences to draw from the evidence presented at trial, requiring only that jurors 'draw reasonable inferences from basic facts to ultimate facts.'" *Coleman v. Johnson*, 132 S. Ct. 2060, 2064 (2012) (per curiam) (quoting *Jackson*, 443 U.S. at 319). Likewise, a reviewing court "do[es] not make credibility determinations in evaluating the sufficiency of the evidence." *United State v. Owusu*, 199 F.3d 329, 344 (6th Cir. 2000); *see also*, *United States v. Bailey*, 444 U.S. 394, 424-25 (1980) ("It is for [jurors] and not for appellate courts to say that a particular witness spoke the truth or fabricated a cock-and-bull story."). It is the job of the jury, not this Court sitting on habeas review, to resolve conflicts in the evidence, and this Court must presume that the jury resolved those conflicts in favor of the prosecution. *See*

11

*Jackson*, 443 U.S. at 326.  As the Court has explained, "the only question under *Jackson* is whether [the jury's finding] was so insupportable as to fall below the threshold of bare rationality." *Coleman*, 132 S. Ct. at 2065.  Under the amended version of § 2254(d)(1) a federal habeas court's review is "twice-deferential." *Parker v. Matthews*, 132 S. Ct. 2148, 2152 (2012) (per curiam).  A state court's decision that the evidence satisfied the deferential *Jackson* standard is itself "entitled to considerable deference under AEDPA." *Coleman*, 132 S. Ct. at 2065; *see also*, *Cavazos*, 132 S. Ct. at 4.

While a challenge to the sufficiency of the evidence on an established element of an offense raises a federal constitutional claim cognizable in a habeas corpus proceeding, "[t]he applicability of the reasonable doubt standard . . . has always been dependent on how a State defines the offense that is charged in any given case." *Patterson v. New York*, 432 U.S. 197, 211 n.12 (1977); *see also*, *Jackson*, 443 U.S. at 324 n.16; *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975).  Thus, "under *Jackson*, federal courts must look to state law for 'the substantive elements of the criminal offense,' but the minimum amount of evidence that the Due Process Clause requires to prove the offense is purely a matter of federal law." *Coleman*, 132 S. Ct. at 2064 (citation omitted) (quoting *Jackson*, 443 U.S. at 324 n.16).  The Michigan home invasion statute provides:

> A person who breaks and enters a dwelling with intent to commit a felony, larceny, or assault in the dwelling, a person who enters a dwelling without permission with intent to commit a felony, larceny, or assault in the dwelling, or a person who breaks and enters a dwelling or enters a dwelling without permission and, at any time while he or she is entering, present in, or exiting the dwelling, commits a felony, larceny, or assault is guilty of home invasion in the first degree if at any time while the person is entering, present in, or exiting the dwelling either of the following circumstances exists:
> (a) The person is armed with a dangerous weapon.
> (b) Another person is lawfully present in the dwelling.

MICH. COMP. LAWS § 750.110a(2).  Thus, "[t]he elements of first-degree home invasion are: (1) the defendant broke into and entered a dwelling without permission, (2) while intending to commit or

actually committing a felony, larceny, or assault while entering, exiting, or present within the dwelling, and (3) another person was lawfully present in the dwelling or the defendant was armed with a dangerous weapon." *People v. Johnson*, No. 285172, 2009 WL 2974771, at *1 (Mich. Ct. App. Sept. 17, 2009) (per curiam); *see also*, MICH. COMP. LAWS § 750.110a(2).

### b. Analysis

Petitioner argues that the verdict was against the weight of the evidence because Ashley testified that he had permission to enter the home, and thus the entry-without-permission element was not established. The Michigan Court of Appeals rejected this argument, reasoning that it was "unclear from Ashley's testimony whether she invited defendant to the home," but that Anderson, "Ashley's boyfriend at the time, testified that defendant entered the home without permission. . . . According to Anderson, defendant walked into the home without knocking or requesting entry." *Meyer*, 2011 WL 5454754, at *1. This determination was reasonable. At trial, Ashley testified that she met petitioner at the door to give him back some stuff. When Anderson came into view, petitioner came into the house and started wrestling with Anderson. She did not, however, directly testify that she ever invited petitioner into the home, or that he had permission to enter. *See* Trial Tr., Vol. II (A.M.), at 35. Anderson, on the other hand, testified that petitioner did not knock or call out, and just walked into the house. Ashley was with him in a different room at the time petitioner walked in. *See* Trial Tr., Vol. II (P.M.), at 34-35. Anderson's testimony, standing alone, provided sufficient evidence to prove beyond a reasonable doubt that petitioner entered without permission. *See O'Hara v. Brigano*, 499 F. 3d 492, 500 (6th Cir. 2007) (victim's testimony alone sufficient even though not corroborated by other witnesses or physical evidence); *United States v. Kenyon*, 397 F.3d 1071, 1076 (8th Cir. 2005) ("Even in the face of inconsistent evidence, a victim's testimony alone can be sufficient to support a guilty verdict."). As noted above, in reviewing the sufficiency of the evidence this Court

does not make credibility determinations, nor does it reweigh the evidence.  A reviewing court may reverse a jury's credibility determinations only where the testimony is incredible as a matter of law, "such as where it was physically impossible for the witness to observe that which he claims occurred, or impossible under the laws of nature for the occurrence to have taken place at all." *United States v. Radziszewski*, 474 F.3d 480, 485 (7th Cir. 2007) (internal quotation omitted); *accord United States v. Smith*, 606 F.3d 1270, 1281 (10th Cir. 2010); *United States v. Flores*, 572 F.3d 1254, 1263 (11th Cir. 2009); *United States v. Gadison*, 8 F.3d 186, 190 (5th Cir. 1993).  Here, Anderson's testimony was not impossible based on his ability to observe or the laws of nature.  The fact that his testimony may have been inconsistent with Ashley's testimony does not render the testimony incredible on its face.  *See United States v. Patterson*, 23 F.3d 1239, 1244 n.5 (7th Cir. 1994).

In short, as the Supreme Court explained the *Jackson* standard does not permit "fine-grained factual parsing" of the evidence by a reviewing court, *Coleman*, 132 S. Ct. at 2064, nor does it permit this Court to reweigh the conflicts in the evidence or assess the credibility of the witnesses.  The trier of fact was free to draw any reasonable inferences from the evidence, and to resolve the conflicts in the evidence in favor of the prosecution.  In light of the victims' testimony it cannot be said that the trial judge's verdict based on the circumstantial evidence was "so insupportable as to fall below the threshold of bare rationality." *Coleman*, 132 S. Ct. at 2065.  Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

E.      *Jury Instructions (Claim VI)*

Petitioner next contends that he was denied a fair trial by the trial court's erroneous instruction on the elements of first degree home invasion.  The Court should conclude that petitioner is not entitled to habeas relief on this claim.

1.      *Clearly Established Law*

14

In order for habeas corpus relief to be warranted on the basis of incorrect jury instructions, a petitioner must show more than that the instructions are undesirable, erroneous or universally condemned; rather, taken as a whole, they must be so infirm that they rendered the entire trial fundamentally unfair. *See Estelle v. McGuire*, 502 U.S. 62, 72 (1991); *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977); *Wood v. Marshall*, 790 F.2d 548, 551-52 (6th Cir. 1986); *cf. United States v. Sheffey*, 57 F.3d 1419, 1429-30 (6th Cir. 1995) (standard of review for jury instructions challenged on direct criminal appeal). As the Supreme Court noted in *Estelle*, the Court should "also bear in mind [the Supreme Court's] previous admonition that we 'have defined the category of infractions that violate "fundamental fairness" very narrowly.'" *Estelle*, 502 U.S. at 72-73 (quoting *Dowling v. United States*, 493 U.S. 342, 352 (1990)). If an instruction is ambiguous and not necessarily erroneous, it can run afoul of the Constitution only if there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution. *See Estelle*, 502 U.S. at 72 & 73 n.4; *Boyde v. California*, 494 U.S. 370, 380 (1990). In short, instructional errors of state law will rarely form the basis for federal habeas corpus relief. *See Estelle*, 502 U.S. at 71-72.

2.    *Analysis*

Petitioner contends that the trial court erred in instructing the jury on the elements of the home invasion offense. In instructing the jury on this offense, the trial transcript reflects the court as instructing: "Third: That when the defendant entered, was present in, or leaving the dwelling, either of the following circumstances existed: He was armed with a dangerous *represent*, and/or another person was lawfully present in the dwelling." Trial Tr., Vol. III, at 56-57 (emphasis added). The Michigan Court of Appeals rejected petitioner's claim on two grounds. First, the court concluded that "[b]ecause the instruction as stated in the record is nonsensical, it appears that a transcription error occurred in which the court reporter substituted the word 'represent' for 'weapon.'" *Meyer*, 2011 WL

15

5454754, at *2. Second, the court of appeals concluded that "even if the trial court misspoke, . . . the instructions as a whole fairly presented the issues to be tried and sufficient protected defendant's rights." *Id*. This was so, the court reasoned, because

> [t]he trial court correctly instructed the jury that it could convict defendant if it concluded that another person was lawfully present in the dwelling when defendant entered, and the evidence showed that two people were lawfully in the home when defendant entered. Moreover, the trial court correctly instructed the jury on the same element in the context of the attempted first-degree home invasion charge against defendant.

*Id*; *see also*, Trial Tr., Vol. III, at 54-55 (correctly stating the elements of first degree home invasion with respect to the attempt charge). These determinations were reasonable.

First, as a factual matter, there was no error in the trial court's instructions. The Michigan Court of Appeals made a factual determination that the instruction as reflected in the transcript was a mere transcription error. Under the habeas statute, the state courts' findings of fact are presumed correct unless rebutted by clear and convincing evidence, *see* 28 U.S.C. § 2254(e)(1), and petitioner is entitled to habeas relief only if the state courts' factual determinations were unreasonable in light of the record, *see* 28 U.S.C. § 2254(d)(2). As the Sixth Circuit has observed, the statutory presumption of correctness contained in § 2254(e)(1) "extends to factual findings made by state appellate courts on the basis of their review of trial court records." *Hardaway v. Withrow*, 305 F.3d 558, 563 (6th Cir. 2002); *see also*, *Sumner v. Mata*, 449 U.S. 539, 547 (1981); *Mason v. Mitchell*, 320 F.3d 604, 614 (6th Cir. 2003). Petitioner has offered nothing to show that this factual finding is clearly erroneous. *See Hardaway*, 305 F.3d at 563-64 (applying presumption of correctness to Michigan Court of Appeals's finding that transcript explaining that jury was instructed on "2nd Degree Involuntary Manslaughter" was an obvious transcription error where, under circumstances of the case, the similarity of sound, and Michigan law it was clear that the transcript should have read

16

"2nd Degree [murder] *and voluntary* manslaughter").

Second, even if the trial court's instruction was erroneous, petitioner cannot show that the error deprived him of a fair trial. The phrase "armed with a dangerous represent" is, as the court of appeals observed, nonsensical, and the jury would naturally have interpreted these words to mean "armed with a dangerous weapon," particularly in light of the fact that the trial court had used those words shortly before in setting forth the elements of attempted first degree home invasion. The trial court's misstatement, if there was one, did not provide an alternative, invalid basis upon which the jury could return a guilty verdict. And in any event, the theory of the case was that petitioner entered the dwelling while it was lawfully occupied. There was no dispute that the dwelling was occupied; petitioner's defense was that he had permission to enter. And there was nothing incorrect in the court's instruction with respect to occupancy. In these circumstances, petitioner cannot show that the instructions as whole deprived him of a fair trial. *Cf. Neder v. United States*, 527 U.S. 1, 17 (1999) (error in failing to instruct on an element of the offense is harmless where "the omitted element was uncontested and supported by overwhelming evidence, such that the jury verdict would have been the same absent the error[.]"). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

F.      *Counsel (Claims I-IV, VII)*

The bulk of petitioner's claims relate to his representation at trial. In the first portion of his first claim, petitioner contends that he was denied his right to represent himself. In the second portion of his first claim, and in his remaining claims, petitioner contends that trial counsel rendered constitutionally ineffective assistance. The Court should conclude that petitioner is not entitled to habeas relief on these claims.

1.      *Denial of Self Representation (Claim IA)*

17

*a.  Clearly Established Law*

The Sixth Amendment, applicable to the states through the Fourteenth Amendment Due Process Clause, provides that a criminal defendant shall have the right to the assistance of counsel in his defense. *See* U.S. CONST. amend. VI.  This right necessarily implies its corollary, that a defendant has a right to proceed without counsel and represent himself. *See Martinez v. Court of Appeal of Cal., Fourth Appellate Dist.*, 528 U.S. 152, 154 (2000); *Faretta v. California*, 422 U.S. 806, 833-34 (1975). The right to assistance of counsel and the right to self-representation are thus correlative rights; the assertion of one necessarily constitutes a waiver of the other. *See United States v. Conder*, 423 F.2d 904, 908 (6th Cir. 1970).  Nevertheless, a defendant's waiver of his right to counsel and decision to proceed *pro se* must be knowing and intelligent. *See Faretta*, 422 U.S. at 835; *Carnley v. Cochran*, 369 U.S. 506, 516 (1962).  As the Supreme Court explained, in order for the defendant's decision to be knowing and voluntary, "he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" *Faretta*, 422 U.S. at 835 (quoting *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279 (1942)).  However, the Supreme Court has "not prescribed any formula or script to be read to a defendant who states that he elects to proceed without counsel," *Iowa v. Tovar*, 541 U.S. 77, 88 (2004), and there is "no sacrosanct litany for warning defendants against waiving the right to counsel." *United States v. Jones*, 421 F.3d 359, 363 (5th Cir. 2005).  Rather, the adequacy of a defendant's waiver is determined from the facts and circumstances of the case. *See Tovar*, 541 U.S. at 88.

However, the right to self-representation is not absolute. *See Martinez*, 528 U.S. at 161.  A defendant's request for self-representation must be made clearly and unequivocally. *See Buhl v. Cooksey*, 233 F. 3d 783, 792 (3d Cir. 2000); *Munkus v. Furlong*, 170 F. 3d 980, 983-984 (10th Cir.

18

1999).  The right to self-representation is waived if it is not timely and unequivocally asserted.  *See Jackson v. Ylst*, 921 F. 2d 882, 888 (9th Cir. 1990).   The right to self-representation may also be waived through conduct which indicates that the defendant is vacillating on the issue or has abandoned his or her request altogether.  *See Wilson v. Walker*, 204 F. 3d 33, 37 (2d Cir. 2000).  A waiver of the right to self-representation may also be found if it reasonably appears to the court that the defendant abandoned his initial request to represent himself.  *See id.*

### b. Analysis

Petitioner was initially represented by C. Michael Gorte, whom he had retained.  Because petitioner had repeatedly contacted the court and the prosecutor without his input, Gorte moved to withdraw based on a conflict of interest.  Petitioner did not object, and informed the court that he would retain new counsel "within the next week."  Mot. to Withdraw Tr., dated 10/5/09, at 4.  The trial court informed petitioner that it would refer his case to the Office of Assigned Counsel so that if petitioner were unable to retain an attorney, he would have one at trial.  *See id.* at 4-5.  The following exchange then occurred:

THE COURT:       Also, Mr. Meyer, Mr. Gorte, these matters are set for trial tomorrow.  You won't have a trial tomorrow.  Mr. Meyer, are you willing to waive your right to a speedy trial so we can get a new lawyer to represent you?

THE DEFENDANT:  No.

THE COURT:       Then if you're not willing to waive your right to speedy trial, you don't have a lawyer to represent you tomorrow.

THE DEFENDANT:  I'm going to try to get one here tomorrow morning.

THE COURT:       That ain't going to work.

THE DEFENDANT:  Why not?

THE COURT:       That ain't going to work.

19

THE DEFENDANT: No?

THE COURT: No. No lawyer is going to come in and try five cases in a day.

THE DEFENDANT: My dad has been speaking to Rod O'Farrell. He's a good friend of the family.

THE COURT: Nobody's going to come in in a day and try cases.

THE DEFENDANT: All right.

THE COURT: Okay. So we have a dilemma. However, I'm still going to grant the request to withdraw. Even if you're not waiving your right to speedy trial, the fact that you want a new lawyer, you can't have your trials set tomorrow and go.

So the matters will be adjourned for tomorrow as well, reset. Refer you back to the Office of Assigned Counsel for a new lawyer. And in the meantime, if you intend to hire one, do so ASAP.

*Id*. at 5-6. Petitioner did not inform the court that he had retained new counsel, so on October 15, 2009, the trial court appointed Timothy Lynch to represent him. On January 12, 2010, with the trial imminent, Lynch (through an associate) requested an adjournment of the trial because he was involved in another trial at that time. *See* Adjournment Tr., dated 1/12/10, at 3. Petitioner requested a reduction in bond, noting how long he had been detained pending trial. The court denied this request.

On January 27, 2010, petitioner filed a *pro se* motion for self-representation, and filed the identical motion on February 16, 2010. His motion was accompanied by another motion asserting his speedy trial rights. In the motion for self-representation, petitioner gave a single basis for representing himself, namely, that he had been "incarcerated for a period of 418 days from arrest, and the court appointed attorney has not assisted in speedy resolution." Mot. for Self-Representation (filed as part of this Court's docket #8-18). Shortly after, the court heard Attorney Lynch's motion to withdraw. Lynch, like Gorte before him, sought to withdraw on the basis that petitioner filed

20

multiple documents on his own that Lynch did not believe were in petitioner's best interests. *See* Mot. to Withdraw Tr., dated 2/22/10, at 4. Petitioner noted that he had filed a motion to represent himself, but objected to Lynch's withdrawal because he need help with the case. *See id.* at 3-4. The trial court granted the motion to withdraw, and informed petitioner that he would refer the matter once again to the Office of Assigned Counsel "to get a lawyer to assist you." *Id.* at 5. Petitioner responded, "That's fine with me. All I want is just some help." *Id.* The trial court appointed Eldor Hermann to represent petitioner on March 1, 2010. On March 8, petitioner and Hermann appeared in response to the prosecutor's motion for joinder of the charges. Hermann indicated that he had conferred with petitioner, and that they had no objection to joinder of the charges. *See* Mot. for Joinder Tr., dated 3/8/10, at 3. Addressing petitioner's request to represent himself, the trial court indicated, "I'm going to have Mr. Herrmann [sic] also represent you in concern with you, and if – we'll see how that goes at the time of trial." *Id.* at 4.

Trial was scheduled to begin on March 23, 2010. At that time, Hermann informed the court that he had recommended to petitioner that "we adjourn today because of my having just recently been on this case, I don't – I'm not as prepared as I would like to be." Trial Tr., Vol. I, at 3. Counsel further informed the court that "[m]y client wishes to proceed, however, with his trial today." *Id.* Petitioner agreed with counsel's representation. Petitioner did not, however, renew his request to represent himself, *see id.* at 4, nor did he ask to be able to represent himself at any point during the trial.

Based on this chain of events, the Michigan Court of Appeals determined that petitioner was not denied his right to represent himself, reasoning:

> On this record, we conclude that defendant waived his right to
> self-representation by failing to assert this right at trial and instead electing to proceed
> with counsel. At a minimum, defendant's request was not unequivocal. Defendant

> seemingly retracted his request to represent himself when his second attorney withdrew, and the trial court permitted defendant to act as his own counsel in concert with an appointed attorney. At trial, however, defendant chose to proceed against his attorney's advice that he seek an adjournment and did not express a desire to represent himself at that time. In these circumstances, defendant's request was not unequivocal, and the trial court did not abuse its discretion by denying defendant's request for self-representation.

*Meyer*, 2011 WL 5454754, at *4. The Court should conclude that this determination was reasonable.

Here, petitioner did not make an unequivocal request to represent himself. The record establishes that petitioner did not desire to represent himself so much as he desired to speed along the proceedings. His motion to represent himself was based solely on the fact that appointed counsel was not moving swiftly enough to have the charges brought to trial. When the trial court addressed these matters with petitioner, petitioner again stressed his interest in securing a speedy trial, but had no objection to the trial court appointing new counsel, and stressed that he wanted counsel because he needed help.[2] Petitioner also proceeded to trial with counsel, without objection or a further request to represent himself. If a defendant's motion for self-representation is ambiguous, and the surrounding circumstances suggest that it is a motion to substitute counsel rather than to proceed *pro se*, the court should construe the request as a request for substitution of counsel. *See United States v. Martin*, 25 F.3d 293, 296 (6th Cir. 1994) ("Where a defendant merely expresses dissatisfaction with trial counsel's performance . . . we will not interpret this as a motion to proceed pro se; instead, it will be understood as an appeal to the trial court's discretion to substitute counsel."); *Perez v. Mashall*, 946 F. Supp. 1521, 1534 (S.D. Cal. 1996). Similarly, here, petitioner's request to proceed without counsel suggests that he was really seeking to enforce his right to a speedy trial, rather than a sincere

---

[2]To the extent petitioner was requesting hybrid representation, there is no constitutional right to "hybrid" representation by a *pro se* defendant and standby counsel together. *See United States v. Cromer*, 389 F.3d 662, 681 n.12 (6th Cir. 2004) (citing *McKaskle v. Wiggins*, 465 U.S. 168, 183 (1984)); *United States v. Bova*, 350 F.3d 224, 226 (1st Cir. 2003); *United States v. Einfeldt*, 138 F.3d 373, 378 (8th Cir. 1998).

desire to proceed *pro se*. *See United States v. Stanley*, 256 Fed. Appx. 583, (4th Cir. 2007) (where counsel was permitted to withdraw during trial, defendant's request to represent himself was not unequivocal; defendant "indicated that his real desire was to persuade the district court not to postpone his trial. He did not express any dissatisfaction about being represented by counsel, nor any reason, apart from avoiding delay, for the request."). At best, the record reflects that petitioner "vacillated between self-representation and representation by counsel." *Gill v. Mecusker*, 633 F.3d 1272, 1295 (11th Cir. 2011). In these circumstances, petitioner cannot show that the Michigan Court of Appeals unreasonably applied clearly established federal law in rejecting his self-representation claim. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

> 2.      *Ineffective Assistance (Claims IB-IV, VII)*

Petitioner next raises several claims that trial counsel was ineffective. The Court should conclude that petitioner is not entitled to habeas relief on this claims.

> a.  *Clearly Established Law*

The Sixth Amendment right to counsel and the right to effective assistance of counsel protect the fundamental right to a fair trial. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish the ineffective assistance of counsel, petitioner must show that: (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense. *Id.* at 687. These two components are mixed questions of law and fact. *Id.* at 698. Further, "[t]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697. If "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id.* With

respect to the performance prong of the *Strickland* test, a strong presumption exists that counsel's behavior lies within the wide range of reasonable professional assistance. *See id*. at 689; *see also O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). "[D]efendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). "[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690. With respect to the prejudice prong, the reviewing court must determine, based on the totality of the evidence before the factfinder, "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id*. at 695. It is petitioner's burden to establish the elements of his ineffective assistance of counsel claim. *See United States v. Pierce*, 63 F.3d 818, 833 (6th Cir. 1995) (petitioner bears the burden of establishing counsel's ineffectiveness); *Lewis v. Alexander*, 11 F.3d 1349, 1352 (6th Cir. 1993) (same).

As the Supreme Court has recently explained, *Strickland* establishes a high burden that is difficult to meet, made more so when the deference required by § 2254(d)(1) is applied to review a state court's application of *Strickland*:

> "Surmounting Strickland's high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. ----, ----, 130 S.Ct. 1473, 1485, 176 L.Ed.2d 284 (2010). An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the Strickland standard must be applied with scrupulous care, lest "intrusive post-trial inquiry" threaten the integrity of the very adversary process the right to counsel is meant to serve. *Strickland*, 466 U.S., at 689-690, 104 S.Ct. 2052. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is "all too tempting" to "second-guess counsel's assistance after conviction or adverse sentence." *Id*., at 689, 104 S.Ct. 2052; *see also Bell v. Cone*, 535 U.S. 685, 702, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002); *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S.Ct. 838, 122

24

L.Ed.2d 180 (1993). The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom. *Strickland*, 466 U.S., at 690, 104 S.Ct. 2052.

Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," *id.*, at 689, 104 S.Ct. 2052; *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles*, 556 U.S., at ----, 129 S.Ct. at 1420. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at ----, 129 S.Ct. at 1420 . Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

*Harrington v. Richter*, 131 S. Ct. 770, 788 (2011).

### b. Failure to Investigate (Claim IB)

Petitioner first contends that counsel was ineffective for failing to investigate a duress defense to the home invasion.  Petitioner argues that Anderson said to him: "Your son is going to call me Daddy."  This, petitioner contends, constituted a provocation that would have negated his specific intent.  He argues that counsel was ineffective for failing to investigate and pursue this defense.  The Court should conclude that petitioner is not entitled to habeas relief on this claim.

Decisions about what defenses to pursue or not pursue are "[a]mong the 'virtually unchallengeable' tactical decisions left to the judgment of trial counsel."  *Gluzman v. United States*, 124 F. Supp. 2d 171, 174 (S.D.N.Y. 2000).  "To counteract the natural tendency to fault an unsuccessful defense, a court reviewing an ineffective assistance of counsel claim must 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance,'" *Nix v. Whiteside*, 475 U.S. 157, 165 (1986) (quoting *Strickland*, 466 U.S. at 689); *see also*, *Griffin v. McVicar*, 84 F.3d 880, 888 (7th Cir. 1996) ("[T]he mere fact that a defendant chooses one of two available defenses cannot establish ineffective assistance of counsel, even if the defendant

makes a bad choice."). "Simply because counsel was unsuccessful does not make him ineffective for Sixth Amendment purposes." *Mayes v. United States*, 93 F. Supp. 2d 882, 891 (E.D. Tenn. 2000). Here, counsel pursued a reasonable defense strategy with respect to the home invasion charge, namely, that petitioner did not enter without permission. The testimony of Ashley, one of the victims, arguably supported this defense, and counsel was reasonable in pursuing that strategy in light of the evidence available.

Moreover, "in assessing the reasonableness of counsel's choice of what defense to pursue, it is not enough to look at the likelihood of success of the defense chosen; a reviewing court must also consider the viability of the defenses which counsel chose not to pursue." *Huckaby v. Lafler*, No. 2:09-cv-10030, 2010 WL 5104844, at *8 (June 28, 2010) (Komives, M.J.), *magistrate judge's report adopted*, 2010 WL 5105155 (E.D. Mich. Dec. 9, 2010) (Battani, J.). Here, petitioner did not have a viable duress defense. Under Michigan law,

> The defense of duress involves a situation in which the defendant acted under threat of death or serious bodily harm. *See [People v.] Luther*, 394 Mich. [619,] 622, 232 N.W.2d 184 [, 186 (1975)] (noting that the defendant allegedly escaped from prison out of fear of homosexual rape). In such cases, the defense "excuses the defendant from criminal responsibility for an otherwise criminal act because the defendant was compelled to commit the act . . . ." *Id*. It is sometimes characterized as a choice of evils and is applicable to situations in which it is preferable, as a matter of social policy, to permit a person to commit a crime in order to avoid a greater harm. *[People v.] Lemons*, 454 Mich. [234,] 246, 562 N.W.2d 447 [, 453 (1997)]. In order to establish duress, the defendant must offer evidence from which a jury could conclude the following:
> > A) The threatening conduct was sufficient to create in the mind of a reasonable person the fear of death or serious bodily harm;
> > B) The conduct in fact caused such fear of death or serious bodily harm in the mind of the defendant;
> > C) The fear or duress was operating upon the mind of the defendant at the time of the alleged act; and
> > D) The defendant committed the act to avoid the threatened harm.
> *Luther*, 394 Mich. at 623, 232 N.W.2d 184.

*People v. Dupree*, 284 Mich. App. 89, 100, 771 N.W.2d 470, 478 (2009), *aff'd on other grounds*, 486

Mich. 693, 788 N.W.2d 399 (2010). Here, petitioner has pointed to no evidence that counsel could have uncovered which would have supported a duress defense under Michigan law. He does not assert that Anderson threatened him with death or bodily harm if he did not enter the house; rather, he contends only that Anderson made a provocative statement. This is insufficient to support a duress defense. Nor can petitioner show that Anderson's alleged provocation provided a defense to the home invasion charge. Although adequate provocation may, in a homicide case, be used to establish that a killing constituted manslaughter rather than murder, petitioner has cited, and I have found, no Michigan case recognizing a provocation defense outside the homicide context.[3]

In light of Ashley's testimony providing some support for the defense pursued by counsel (*i.e.*, that petitioner had permission to enter the house), and the lack of viability of a duress defense, petitioner cannot show that counsel made an unreasonable strategic decision in choosing to pursue the former rather than the latter. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.[4]

---

[3]Petitioner relies on *People v. Brown*, 399 Mich. 350, 249 N.W.2d 693 (1976), which he contends recognized a defense to a specific intent crime based on the loss of one's child. This argument is without merit. In *Brown*, the defendant raised a defense of insanity based on anxiety caused by the loss of his son and intoxication, which he contended combined to prevent him from forming the specific intent necessary to commit the crime. *See Brown*, 399 Mich. at 353, 249 N.W.2d at 694. The court did not pass on the viability of a general "loss of child" defense; rather, the only issue considered by the court was whether impeachment evidence offered by an expert witness was properly admitted. Petitioner does not contend that Anderson's alleged provocative statement rendered him legally insane. Moreover, even if there is some "loss of child" defense to a specific intent crime, "[u]nder MCL 750.110a, the element of intent is not required, as first-degree home invasion can be proven where: (1) a person breaks and enters a dwelling or enters a dwelling without permission, (2) a felony, larceny or assault is committed while the person is in the dwelling, and (3) another person is lawfully present in the dwelling." *People v. Sillivan*, No. 269501, 2007 WL 2331866, at *1 (Mich. Ct. App. Aug. 16, 2007) (per curiam); *see also*, *People v. Williams*, No. 257404, 2006 WL 171496, at *1 (Mich. Ct. App. Jan. 24, 2006) (per curiam).

[4]Throughout his ineffective assistance claims, petitioner makes general assertions that counsel was unprepared for trial. Any general claim based on counsel's lack of preparation, however, cannot amount to ineffective assistance. Counsel advised petitioner to seek an adjournment for this very

*c.  Failure to Object to Joinder (Claims II & VII)*

Petitioner next contends that counsel was ineffective for failing to object to joinder of the various cases.  The Michigan Court of Appeals rejected this claim, concluding that joinder of the offenses was appropriate under state law, and thus that counsel was not ineffective for failing to object to joinder.  *See Meyer*, 2011 WL 5454754, at *3.  This determination was reasonable.

The Michigan Court of Appeals concluded that the charges were properly joined under state law, reasoning:

> All of the charges against defendant stemmed from his conduct toward Ashley at the end of their relationship.  Although the four incidents occurred over 35 days at different locations and involved another man with whom Ashley had a relationship, for purposes of MCR 6.120(B)(1)(b) and (c), the charges were related as a series of connected acts that constituted parts of a single plan to harass and retaliate against Ashley.

*Meyer*, 2011 WL 5454754, at *3.  In analyzing petitioner's ineffective assistance of counsel claim, this expression of state law is binding on this Court.  *See Basile v. Bowersox*, 125 F. Supp. 2d 930, 960 (E.D. Mo. 1999).  *See generally*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Sarausad v. Porter*, 503 F.3d 822, 824 (9th Cir. 2007) ("A determination of state law by a state appellate court is . . . binding in a federal habeas action.").  Thus, any objection to joinder of the charges would have been meritless.  Because it is well established that counsel cannot be deemed ineffective for failing to raise a meritless objection, *see Bradley v. Birkett*, 192 Fed. Appx. 468, 475 (6th Cir. 2006); *Anderson v. Goeke*, 44 F.3d 675, 680 (8th Cir. 1995); *Burnett v. Collins*, 982 F.2d 922, 929 (5th Cir.

---

reason, but petitioner himself insisted on proceeding to trial despite counsel's asserted lack of complete preparedness.  *See Brooks v. Cox*, 317 F. Supp. 134, 136 (W.D. Va. 1970) ("Counsel is not ineffective when he proceeds to trial on the same day of his appointment for a defendant, who aware of his rights to delay the proceedings until counsel has investigated and prepared further, insists on his immediate trial."); *cf. Dang v. Lampert*, 135 Fed. Appx. 13, 14 (9th Cir. 2005) (counsel not ineffective for obtaining forensic testing where petitioner "knowingly forced his counsel to trial with little more than thirty days lead time by insisting that the prosecution comply with his statutory speedy trial rights.").

1993), petitioner is not entitled to habeas relief on this claim.

Moreover, petitioner cannot establish that he was prejudiced by joinder of the charges. "Such prejudice may arise when there is a great disparity in the amount of evidence supporting the charges or when the jury is likely to confuse the evidence or infer a criminal disposition on the part of the defendant." *Webber v. Scott*, 390 F.3d 1169, 1178 (10th Cir. 2004). The inquiry should focus on "cross-admissibility of evidence and the danger of 'spillover' from one charge to another, especially where one charge or set of charges is weaker than another." *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004). Here, petitioner does not identify any unfairly prejudicial evidence relevant to some charges that would not have been relevant to other charges, nor does he allege a great disparity in the strength of the evidence. Nor was there any danger of confusion, as evidenced by the fact that the jury considered each charge individually, acquitting him of some charges and convicting him of others. In these circumstances, where the evidence was cross-admissible and there was no risk of juror confusion, petitioner cannot show he was denied a fair trial by the joinder of the charges. *See Webber*, 390 F.3d at 1178; *Davis*, 384 F.3d at 639; *United States v. Jacobs,* 244 F. 3d 503, 507 (6th Cir. 2001). He likewise, therefore, cannot establish that he was prejudiced by counsel's failure to object to joinder. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

### d. Failure to Offer Mitigating Evidence (Claim III)

Petitioner next contends that counsel was ineffective for failing to offer mitigation evidence at sentencing that would have supported a downward departure from the sentencing guidelines. The Michigan Court of Appeals rejected this claim. Noting that a departure from the sentencing guidelines is warranted only if there is a "substantial and compelling" reason for departure, that is, "an objective and verifiable reason that keenly or irresistibly grabs the court's attention," *Meyer*, 2011

WL 5454754, at *5, the court reasoned that petitioner's proffered reasons for a downward departure, "his employment history, strong family support, and mental health and psychological problems," did not "keenly or irresistibly grab [the court's] attention or exist only in exceptional cases," and thus his "reasons for departure are not substantial and compelling." *Id*. As noted above, this determination of state law is binding in analyzing petitioner's ineffective assistance claim. Because the court of appeals determined as a matter of state law that petitioner's mitigation factors did not provide substantial and compelling reasons for a downward departure, he cannot show that he was prejudiced by counsel's failure to argue these factors at sentencing. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

### e. Failure to Object to Police Testimony (Claim IV)

Petitioner next contends that counsel was ineffective for failing to object to false testimony from Officer Fromholz that a gun was recovered from petitioner's apartment after the November 1, 2008, incident. Specifically, Fromholz testified that Ashley told him that petitioner had pointed "a long gun" at her. *See* Trial Tr., Vol. II (A.M.), at 50. On cross-examination, Fromholz testified that he did not recover a gun, but that he believed a gun had been recovered and that he assumed it was in evidence. *See id.* at 55. The Michigan Court of Appeals rejected petitioner's claim, reasoning that counsel himself had elicited the testimony, and that in any event petitioner could not establish prejudice "because the jury acquitted him of felonious assault and possession of a firearm during the commission of a felony with respect to the November 1, 2008, incident." *Meyer*, 2011 WL 5454754, at *5. This determination was reasonable.

At the outset, petitioner cannot show that Fromholz's testimony was false, and therefore objectionable. Fromholz testified only that Ashley told him that a gun had been involved. He did not testify that he saw or recovered a firearm. As to whether any such gun had been recovered, he did not

30

definitively testify that a gun had been recovered, only that believed one had and that he assumed it was in evidence. In any event, counsel successfully challenged this testimony through other means. Counsel elicited from Office Gettel that she did not search the apartment, and that to her knowledge no firearm had been recovered. *See* Trial Tr., Vol. II (A.M.), at 61. In closing argument, defense counsel argued that the felonious assault and felony-firearms charges were not supported because Ashley testified that no gun had been involved, and the police had failed to recover a gun or offer it into evidence. *See id.*, Vol. III, at 18-20. This argument was successful, as the jury acquitted petitioner of the only two charges to which the firearm was relevant. Because counsel successfully negated Fromholz's testimony through the testimony of another witness and through closing argument, petitioner cannot show that he was prejudiced by counsel's failure to object to Fromholz's testimony. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

G.     *Recommendation Regarding Certificate of Appealability*

    1.     *Legal Standard*

As amended by the Antiterrorism and Effective Death Penalty Act, section 2253 provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1). The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). As the Sixth Circuit has noted, this language represents a codification of the Supreme Court's decision in *Barefoot v. Estelle*, 463 U.S. 880 (1983), and "[t]he AEDPA thus makes no change to the general showing required to obtain a certificate[.]" *Lyons v. Ohio Adult Parole Auth.*, 105 F.3d 1063, 1073 (6th Cir. 1997); *accord Slack v. McDaniel*, 529 U.S. 473, 483 (2000). Although the statute does not define what constitutes a "substantial

31

showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue. Rather, the courts that have considered the issue have concluded that "'[a] substantial showing requires the applicant to "demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further."'" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996) (quoting *Barefoot*, 463 U.S. at 893 n.4)); *accord Slack*, 529 U.S. at 483-84. Although the substantive standard is the same, "[t]he new Act does, however, require that certificates of appealability, unlike the former certificates of probable cause, specify which issues are appealable." *Lyons*, 105 F.3d at 1073. (citing 28 U.S.C. § 2253(c)(3)).

Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254. The rule tracks § 2253(c)(3)'s requirement that any grant of a certificate of appealability "state the specific issue or issues that satisfy the showing required by § 2253(c)(2)," Rule 11(a), but omits the requirement contained in the pre-amendment version of Federal Rule of Appellate Procedure 22(b)(1) that the court explain "why a certificate should not issue." Fed. R. App. P. 22(b)(1) (version effective prior to 2009 amendment); *see id.*, advisory committee note, 2009 amendments. In light of the new Rule 11 requirement that the Court either grant or deny the certificate of appealability at the time of its final adverse order, I include a recommendation regarding the certificate of appealability issue here.

    2.   *Analysis*

If the Court accepts my recommendation regarding the merits of petitioner's claims, the Court

should also conclude that petitioner is not entitled to a certificate of appealability.  With respect to petitioner's sufficiency of the evidence claim, it is clear that Anderson's testimony alone provided sufficient evidence to prove beyond a reasonable doubt that petitioner entered the home without permission.  Thus, the resolution of this claim is not reasonably debatable.  With respect to petitioner's jury instruction claim, the Michigan Court of Appeals reasonably found that the error reflected in the transcript was a mere transcription error, and in any event it is clear that the instructions as a whole adequately informed the jury of the elements of the home invasion offense.  Thus, the resolution of this claim is not reasonably debatable.  Because the Michigan Court of Appeals reasonably determined that petitioner failed to make an unequivocal request to represent himself and acquiesced in counsel's representation, the resolution of petitioner's self-representation claim is not reasonably debatable.  As explained above, counsel reasonably chose to pursue a defense to the home invasion charge that was based on the evidence, and petitioner has failed to present a viable defense that further investigation could have uncovered.  Thus, the resolution of this ineffective assistance claim is not reasonable debatable.  Because joinder of the charges and petitioner's sentence were appropriate as matters of state law, it is not reasonably debatable that petitioner was not prejudiced by counsel's failure to object to joinder or arguing for a downward departure.  Finally, because petitioner was acquitted of the only charges to which his possession of a gun was relevant, the resolution of petitioner's ineffective assistance claim relating to Officer Fromholz's testimony is not reasonably debatable.  Accordingly, the Court should deny petitioner a certificate of appealability.

H.    *Conclusion*

In view of the foregoing, the Court should conclude that the state courts' resolution of petitioner's claims did not result in a decision which was contrary to, or which involved an

unreasonable application of, clearly established federal law. Accordingly, the Court should deny petitioner's application for the writ of habeas corpus. If the Court accepts this recommendation, the Court should also deny petitioner a certificate of appealability.

III.     NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in FED. R. CIV. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Date: April 16, 2014                              s/Paul J. Komives
                                                  PAUL J. KOMIVES
                                                  UNITED STATES MAGISTRATE JUDGE

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on April 16, 2014.

s/ Kay Doaks
Case Manager